| | |
|---|---|
| T.M. AND S.M., INDIVIDUALLY AND AS PARENTS AND NATURAL GUARDIANS OF J.M., A MINOR,<br><br>Plaintiffs,<br><br>v.<br><br>EAST STROUDSBURG AREA SCHOOL DISTRICT; COLONIAL INTERMEDIATE UNIT 20; SUPERINTENDENT WILLIAM RIKER; PRINCIPAL JENNIFER MORIARTY; DISTRICT TRANSPORTATION DIRECTOR DAMARIS ROBINS; AND RUDOLPH PARCIASEPE,<br><br>Defendants. | UNITED STATES DISTRICT COURT FOR THE MIDDLE DISTRICT OF PENNSYLVANIA<br><br>CIVIL ACTION – LAW<br><br>JURY TRIAL DEMANDED<br><br>No. _____ |

## COMPLAINT

**NOW COME** the Plaintiffs, T.M. and S.M., Individually and as Parents and natural guardians of J.M., a minor, by and through their undersigned counsel, The Moran Law Group, LLC, and hereby complain of the above named Defendants as follows:

## PARTIES

1.      Plaintiff, T.M., is an adult, competent individual, and resident of the Commonwealth of Pennsylvania, and is the parent and natural guardian of J.M., who may be contacted through his counsel, Lawrence J. Moran, Sr., Esquire, and/or Robert T. Moran, Esquire, and/or Luke P. Moran, Esquire c/o The Moran Law Group, LLC, 116 N. Washington Avenue, Scranton, PA 18503.

2.      Plaintiff, S.M., is an adult, competent individual, and resident of the Commonwealth of Pennsylvania, and is the parent and natural guardian of J.M., and who may be contacted through her counsel, Lawrence J. Moran, Sr., Esquire, and/or Robert T. Moran, Esquire,

and/or Luke P. Moran, Esquire c/o The Moran Law Group, LLC, 116 N. Washington Avenue, Scranton, PA 18503.

3.      Minor Plaintiff, J.M., is a profoundly developmentally delayed minor child with severe non-verbal autism, and is the child of Plaintiffs, T.M. and S.M., and resides with his parents in Pennsylvania.

4.      Minor Plaintiff J.M.'s name and address is not contained within this Complaint, so as to protect the privacy and identity of Plaintiff J.M., who incurred injuries and damages while a minor as set forth hereinafter, as well as the privacy and identity of Plaintiffs, T.M. and S.M., the parents and natural guardians of Plaintiff J.M.

5.      Use of pseudonyms is done in good faith in order to avoid humiliation, embarrassment, additional psychological harm, and disruption or interference with Plaintiffs, T.M., S.M. and J.M. The identity of Plaintiffs, T.M., S.M. and J.M., has been made known to Defendants by separate communication.

6.      Defendant, East Stroudsburg Area School District (hereinafter "ESASD") is a school district duly organized, established and existing under the laws of the Commonwealth of Pennsylvania, and maintains an administrative office at 50 Vine Street, East Stroudsburg, Monroe County, Pennsylvania 18301.

7.      At all times material and relevant hereto, ESASD acted by and through its agents, employees, servants, and officers during the relevant time frame from September of 2021 to June of 2022.

8.      Defendant, Colonial Intermediate Unit 20, is a regional educational services agency duly organized, established and existing under the laws of the Commonwealth of Pennsylvania, and maintains an administrative office at 6 Danforth Drive, Easton, Pennsylvania 18045. The

Colonial Intermediate Unit 20 is part of the public school system of the Commonwealth of Pennsylvania and provides statutorily mandated educational services to school districts in Monroe County, including, *inter alia*, the East Stroudsburg Area School District.

9.      At all times material and relevant hereto, Colonial Intermediate Unit 20 acted by and through its agents, employees, servants, and officers during the relevant time frame from September of 2021 to June of 2022.

10.     At all times material and relevant hereto, ESASD was a constituent member school district with whom Colonial Intermediate Unit 20 contracted to provide specialized services for, *inter alia*, special needs students with specialized skills that the district was unable to provide.

11.     Defendant, Rudolph Parciasepe, is, upon information and belief, an adult, competent individual who currently resides in Pennsylvania, whose current address is presently unknown and will be revealed in discovery, and who was employed by Defendant, East Stroudsburg Area School District, as a school bus driver/operator for the East Stroudsburg Area School District at the time of the events outlined in this complaint.

12.     At all times material and relevant hereto, Defendant, Rudolph Parciasepe (hereinafter referred to as "Defendant Rudolph"), was authorized by Defendant, ESASD, to perform the duties and functions of a school district bus driver to provide transportation for students enrolled in schools within the East Stroudsburg Area School District including students enrolled at, and travelling to and from, Middle Smithfield Elementary School, and, in fact, Defendant Rudolph acted within the scope of said duties and responsibilities at the time of the events outlined herein below.

13.     At all times material and relevant hereto, during school year 2021-2022, Minor Plaintiff, J.M., was in a Colonial Intermediate Unit 20 classroom at Middle Smithfield Elementary School in the East Stroudsburg School District.

14.     At all times relevant hereto, ESASD, acted by and through its agents, employees, servants and officers, to wit, supervisors, administrators and principals, during the relevant time period, from the beginning of Defendant Rudolph's employment with the East Stroudsburg Area School District through to on or about May 6, 2022, when Defendant Rudolph was officially suspended by the East Stroudsburg Area School District.

15.     Defendant Rudolph was subsequently terminated from his position as a school bus driver with ESASD.

16.     Defendant, William Riker, is an adult, competent individual who currently resides in Monroe County, and who, at the time of the events set forth in this Complaint, was employed as the Superintendent of East Stroudsburg Area School District, with his office at 50 Vine Street, East Stroudsburg, Monroe County, Pennsylvania 18301.

17.     In his capacity as superintendent, Defendant Riker was a policymaker for the East Stroudsburg Area School District, and at all times material and relevant hereto, was authorized by ESASD to perform the duties and responsibilities of the Superintendent and, in fact, acted within the scope of said duties and responsibilities, which included, but were not limited to supervising and monitoring all ESASD professional employees including Defendant Rudolph at the time of the events outlined herein below, supervising the school property and transportation vehicles, including school district buses, where Defendant Rudolph performed his employment duties, and supervising the care and custody of the students being transported therein.

18.     Defendant, Jennifer Moriarty (hereinafter "Defendant Moriarty" or "Moriarty"), is an adult, competent individual who, at the time of the events set forth in this Complaint, was employed by the East Stroudsburg Area School District as the Principal of Middle Smithfield Elementary School during the 2021-2022 school year and maintained an office at 5180 Milford Road, East Stroudsburg, Pennsylvania, 18302. At all times material and relevant to the 2021-2022 school year, Moriarty was authorized by ESASD to perform the duties and functions of Middle Smithfield Elementary School's Principal and, in fact, acted within the scope of said duties and responsibilities in overseeing Defendant Rudolph at the time of the events outlined herein below.

19.     Defendant, Damaris Robins (hereinafter "Defendant Robins" or "Robins"), is an adult, competent individual who, at the time of the events set forth in this Complaint, was employed by the East Stroudsburg Area School District as Transportation Director of East Stroudsburg Area School District, with her office at 50 Vine Street, East Stroudsburg, Monroe County, Pennsylvania 18301.  At all times material and relevant hereto, Robins was authorized by ESASD to perform the duties and functions of ESASD's Director of Transportation and, in fact, acted within the scope of said duties and responsibilities in overseeing Defendant Rudolph at the time of the events outlined herein below.

## JURISDICTION AND VENUE

20.     Jurisdiction over this matter for this Honorable Court is founded on Plaintiff's constitutional and federal claims pursuant to 28 U.S.C. §1331 and 28 U.S.C. §1343(a)(3).

21.     This Court may also exercise jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. §1367(a).

22.     All of the acts or omissions of the named Defendants complained of herein by Plaintiff occurred within the Middle District of Pennsylvania. As such, venue is proper in this District pursuant to 28 U.S.C. §1391(b)(2).

## FACTUAL BACKGROUND

23.     As will be more fully set forth herein, this Complaint depicts a scandal consisting of the physical and emotional abuse of a severely non-verbal autistic child, inflicted by another student with documented behavioral issues during a series of brutal, violent, bloody and horrific assaults that occurred on an ESASD school bus while the students were being transported by an ESASD employee, Defendant Rudolph, who permitted the abuse to occur and whose abhorrent and reckless conduct during the course and scope of his employment duties with ESASD consisted of knowingly observing the violent assaults as they were occurring, deliberately failing to intervene, and permitting them to continue unbated while a helpless, non-verbal autistic child was savagely beaten while he was restrained in his school bus seat.

24.     Minor Plaintiff J.M. was born on November 7, 2015, and is currently eight (8) years old.  At the time of the events outlined below, Minor/Plaintiff was six (6) years old.

25.     Minor Plaintiff has been diagnosed with severe developmental and cognitive disabilities and special needs including, *inter alia*, autism spectrum disorder, non-verbal autism, and severe intellectual disability.

26.     As a result of his diagnosed disabilities and disorders, Minor Plaintiff J.M. is not able to verbally communicate.

27.     Because of his special needs, Minor/Plaintiff, including, but not limited to the time period from September 2021 through June 2022, was enrolled in a Colonial Intermediate Unit 20 classroom at Middle Smithfield Elementary School in the East Stroudsburg School District, having

been deemed to be eligible under those requirements by the Individuals with Disabilities Education Act ("IDEA") as a student with special needs.

28.    Defendant ESASD, through its contract with Defendant Colonial Intermediate Unit 20, provided specialized education to students enrolled in schools within the ESASD with diagnosed special needs, including Minor Plaintiff J.M.

29.    At all times material and relevant hereto, Defendant ESASD had a duty to exercise care, custody and control over the students to whom it delivered such specialized education within the East Stroudsburg Area School District, including Minor Plaintiff J.M., and exercised supervisory responsibilities over its school bus drivers/operators within the ESASD, including over Defendant Rudolph.

30.    As a special needs institution, the East Stroudsburg Area School District and their special education employees are required to follow the Regulations for Special Education devised by the State Department of Education, i.e. Title 22 of the Pennsylvania State Code, Chapter 14, which regulations govern the treatment and education of special needs public school children, including behavior management and emotional support.

31.    The Board of Directors of East Stroudsburg Area School District has adopted 23 Pa. C.S.A. §6301 to affirm the obligation of ESASD employees to assist in identifying possible child abuse, as well as victimization of students by other employees, and to establish procedures for supporting such in compliance with the Child Protective Services Law of 1990 and its amendments.

32.    By operation of law, the Pennsylvania Department of Education must approve the annual plan of ESASD, as assurance by signature of, *inter alia*, the superintendent, Defendant

Riker, that the school district is going to adhere to all of the aforementioned regulations and laws regarding the education of students with disabilities.

33.     Minor Plaintiff J.M.'s special education classroom at Middle Smithfield Elementary School during the 2021-2022 school year was comprised only of students with special needs.

34.     Based upon Minor Plaintiff placement in the special needs classroom, and due to J.M.'s diagnosed disabilities, ESASD should have provided J.M. with special needs transportation to and from Middle Smithfield Elementary School, including ensuring that J.M. was transported on a school bus comprised only of students with special needs, like in his classroom at school, and that he not be permitted to ride on a school bus with students that have documented behavioral issues.

35.     At all times material and relevant hereto, including, but not limited to the time period from September 2021 through June 2022, despite J.M.'s special needs, disabilities and inherent vulnerabilities due to his inability to communicate verbally, ESASD required J.M. to ride on a school bus alongside students with known documented behavioral issues, and violent tendencies.

36.     At all times material and relevant hereto, Defendant Rudolph was employed by ESASD as a school district bus driver/operator and was acting within the scope and authority of his employment as a school bus driver working for Defendant ESASD.

37.     At all times material and relevant hereto, including while he was transporting school district students and children on the school bus, Defendant Rudolph was a mandated reported pursuant to state and federal law, required by law to report suspected child abuse.

38.     At all times material and relevant hereto, including while he was transporting school district students and children on the school bus, Defendant Rudolph had a duty to intervene to stop abuse as it is occurring between students, or to protect a child from abuse inflicted by another student on the school bus.

39.     At all times relevant and material hereto, Defendant, ESASD, was responsible for ensuring that each school employee who interacted with children, including its bus drivers like Defendant Rudolph, was adequately trained in providing ESASD students with safe transportation and a safe environment while travelling on ESASD transportation vehicles and school buses.

40.     At all times relevant and material hereto, including while J.M. was being transported on ESASD school buses, the school buses were equipped with internal surveillance video cameras that record the inside of the school bus while students are being transported. ESASD maintains copies of all video surveillance footage recorded from their internal school bus video cameras.

### THE FIRST INCIDENT – UNEXPLAINED SCRATCH MARKS

41.     On or about March 8, 2022, during school year 2021-2022, Minor Plaintiff, J.M., was transported from Middle Smithfield Elementary School to his home located at 2248 Milford Road, Bushkill, Pennsylvania, 18324.

42.     On March 8, 2022, despite his severe disabilities, J.M. was placed on a school bus with older able-bodied children, including children who were known to ESASD to have documented behavioral issues and violent tendencies, without sufficient and appropriate supervision.

43.     On March 8, 2022, the school bus that J.M. was placed on along with older able-bodied children with behavioral issues was being driven and operated by a substitute bus driver named Michele.

44.     On March 8, 2022, J.M. was the only child on the school bus who was strapped to and restrained in his school bus seat.

45.     As he does every day, Minor Plaintiff's father, Plaintiff, T.M., was waiting to pick J.M. up at the bus stop where J.M. was dropped off from school on or about the afternoon of March 8, 2022.

46.     Upon picking up J.M, from the school bus at the bus stop, the driver of the bus that day, a substitute driver by the name of "Michele," and employed by ESASD, told J.M.'s father, Plaintiff, T.M., that J.M. was very noisy and irritated during his ride home from school.

47.     Upon hearing this from the substitute bus driver, Michele, T.M. was prompted to check J.M's body to see if anything was hurting him and T.M. observed that J.M. had significant scratch marks on his body including on his neck, behind his left ear, and on one of his fingers.

48.     When J.M. left for school on the morning of March 8, 2022, he did not have any scratch marks on his body.

49.     When J.M. left for school on the morning of March 8, 2022, he did not have scratch marks on his neck, behind his left ear, or on any of his fingers.

50.     Because J.M. is non-verbal autistic, he was unable to communicate verbally to his to his parents what had happened to him or to explain how the scratch marks got on his body.

51.     On March 8, 2022, no one from ESAD, Colonial Intermediate Unit 20, or Middle Smithfield Elementary School, contacted J.M.'s parents about the scratches on J.M or to explain what happened to J.M. at school that day.

52.     Due to their concern about the scratch marks and J.M.'s s inability to communicate what happened to him, J.M.'s mother, Plaintiff, S.M., contacted J.M.'s teacher at Colonial Intermediate Unit 20 (whose classroom is located in the Middle Smithfield Elementary School), Ms. Lopez, to inquire as to an explanation for how the scratch marks appeared on his body while he was at school that day.

53.     On March 8, 2022, at 4:54 p.m., Plaintiff, S.M., sent an email to Ms. Lopez's Colonial IU 20 email address, notifying her that J.M. came home with the scratch marks including on his neck, behind his left ear, or on any of his fingers, which had not been on J.M.'s body when he left for school that morning, and inquiring of Ms. Lopez whether anything happened at school that day that would explain the scratch marks on J.M.  S.M. included as attachments to her email photographs of the scratch marks on J.M.

54.     By reply email dated March 8, 2022, at 7:07 p.m., Ms. Lopez responded to S.M.'s email stating that "nothing happened in our class that would give [J.M.] those marks." Ms. Lopez advised that she asked her staff in the classroom, and they did not notice any scratch marks on him when they were getting him ready to leave for the day. As such, Ms. Lopez suggested S.M. ask the school bus driver if anything happened on the bus that day, since the scratch marks were not on J.M. when he left the classroom for the day that afternoon.

55.     The scratch marks were not on J.M. when he left his classroom for the day on the afternoon of March 8, 2022.

56.     According to Ms. Lopez's account, the scratch marks must have appeared and/or were inflicted on J.M. some time between the time J.M. departed the school grounds on the school bus on the afternoon of March 8, 2022, and the time when he was dropped off at the school bus stop later that same afternoon.

13

57.     The scratch marks on J.M.'s body were inflicted while he was being transported on an ESASD school bus on March 8, 2022, including on his neck, behind his left ear, and on one of his fingers.

58.     On March 9, 2022, S.M. then contacted Defendant, Damaris Robins, Transportation Director for ESASD, forwarding her email correspondence with Ms. Lopez indicating that J.M.'s scratch marks were inflicted on him while he was riding on the school bus on the afternoon of March 8, 2022, and enclosing pictures of J.M.'s scratch marks, and asking of Defendant Robins that J.M. be seated at the front of the bus so the bus driver can keep an eye on him and ensure he is not being harmed.

59.     Having received no response from Defendant Robins, on March 10, 2022, S.M. again emailed Defendant Robins requesting to see the video surveillance footage from inside the school bus on the afternoon of March 8, 2022.

60.     In response to S.M.'S follow-up March 10, 2022, email, Defendant Robins responded that she would look at the footage from March 8, 2022 and get back to S.M.

61.     On March 15, 2022, Defendant Robins emailed S.M. and advised that she personally reviewed the video camera footage from inside the bus on March 8, 2022 and that "the scratch marks that were present on [J.M.] did not occur on the bus." Defendant Robins further stated that J.M. had a "quiet ride" and "did not seem to be uncomfortable at all."

62.     Defendant Robins statements in her March 15, 2022 email to S.M. are directly contradicted by the account of the school bus driver who actually transported J.M. on March 8, 2022, who told J.M's father, Plaintiff, T.M., that J.M. was very noisy and irritated during his ride home from school and that's what prompted him to check J.M's body to see if anything was hurting him and that is precisely when they noticed the scratch marks.

63.     To date, Defendant Robins never responded to S.M.'s email which notified Robins that her account is directly contradicted by the account of the school bus driver who actually transported J.M. on March 8, 2022.

64.     On March 8, 2022, ESASD permitted another, older student with behavioral issues and violent tendencies that were known to ESASD, identified in this Complaint only as "Aiden", to ride on the same school bus with Minor Plaintiff J.M. despite J.M's severe disabilities and Aiden's documented behavioral issues and known violent tendencies.

65.     On March 8, 2022, as he is every day, because of his severe disabilities, J.M. was the only child on the school bus who was strapped to and restrained in his school bus seat.

66.     Based upon information and belief, an ESASD employee reported an incident on or about March 8, 2022, involving J.M. to ESASD administration. However, these employees and/or administrators failed to intervene, remedy, and/or appropriately report this incident as mandated by law.

67.     Following the March 8, 2022, incident, J.M's mother, Plaintiff S.M., contacted Defendant, Damaris Robins by electronic email communication and notified her that she is concerned J.M. may have been assaulted on the school bus on March 8th, and requested of Defendant Robins and ESASD that J.M. be seated in the front of the bus so the bus driver could keep an eye on him for his protection and safety.

68.     However, Defendant Robins refused to grant S.M.'s request that J.M. be seated in the front of the bus so the bus driver could keep an eye on him, and this request was likewise ignored by ESASD following the March 8, 2022, incident.

69.     Following the March 8, 2022, incident, Plaintiff, S.M., sent multiple electronic email messages to Defendant Robins requesting an investigation into the March 8, 2022 incident

on the school bus and requesting that ESASD institute simple protective measures for J.M. such as seating him near the front of the bus in view of the bus driver.

70.     Each of Plaintiff S.M.'s written emails and documented concerns expressed to Defendant Robins went ignored, or otherwise unaddressed by Defendants Robins and ESASD.

71.     Defendants, Damaris Robins and ESASD failed to take any action the protect J.M from harm in response to Plaintiff, S.M.'s initial report about the March 8 , 2022, incident.

72.     Defendant ESASD, by and through the acts and failures to act of Defendant Robins, willfully disregarded Plaintiff S.M.'s documented concerns by:

a)  Failing to respond to multiple emails from Plaintiff S.M. raising concerns about the March 8, 2022 incident and J.M.'s safety in general while riding on the school bus;

b)  Failing to investigate the March 8, 2022 incident;

c)   Failing to permit either of J.M.'s parents to view internal school bus surveillance video footage depicting J.M.'s school bus ride on March 8, 2022, as Plaintiff requested;

d)  Failing to ensure proper and adequate motoring and supervision of J.M. and the other school students riding on the school bus including on March 8, 2022 and after March 8, 2022; and

e)  Failing to ensure that J.M. was seated at the front of the bus in view of the bus driver, as requested by Plaintiff, S.M., following the March 8, 2022, incident.

73.     Following the March 8, 2022, incident, J.M. was not seated at the front of the bus for his protection and safety as requested by his mother of Defendant Robins and continued to ride the bus with other able-bodied students with known behavioral issues and violent tendencies.

16

## THE SECOND INCIDENT – VIOLENT ATTACK

74.     On April 25, 2022, despite his severe disabilities, J.M. continued to be placed on a school bus with older able-bodied children, including Aiden, who was known to ESASD to have documented behavioral issues and violent tendencies, without sufficient and appropriate supervision.

75.     On April 25, 2022, J.M. was not seated near the front of the bus, as requested of Defendant Robins and ESASD by J.M.'s parents.

76.     On April 25, 2022, the school bus that J.M. was placed on along with older able-bodied children, including Aiden, was being driven and operated by Defendant Rudolph.

77.     On April 25, 2022, J.M. was the only child on the school bus who was strapped to and restrained in his school bus seat, as he was on March 8, 2022.

78.     On April 25, 2022, after J.M. was strapped in and restrained in his seat, Aiden took his seat on the school bus in a seat located directly across the aisle from J.M.

79.     While the bus was travelling from Middle Smithfield Elementary School, and in plain view of Defendant Rudolph who had a clear view in his rear view mirror of what the students were doing right behind him, Aiden proceeded to savagely and violently attack J.M. while he was restrained in his seat, including punching him in the face and head and repeatedly hurling and throwing closed fist punches at and connecting with J.M.'s face, nose, eye and head.

80.     The savage attack continued unabated for several minutes as Aiden continued to hurl violent punches at J.M.'s face and head, resulting in J.M. bleeding profusely from his face, with blood all over J.M.'s seat and window.

81.     J.M. sustained numerous severe and traumatic injuries in the attack.

82.     During the attack, J.M. was the only child strapped to and restrained in his school bus seat and he was thus unable to escape the torment he endured.

83.     Defendant Rudolph observed this vicious and violent attack on April 25, 2022, as it was occurring and did not intervene in any way to stop the attack or to otherwise protect J.M., despite Defendant Rudolph's knowledge that the attack was occurring, that Aiden had behavioral issues and that J.M. was unable to protect himself.

84.     While the attack was occurring, another student on the bus, identified in this complaint on as "Tyler" told Defendant Rudolph that J.M. was being beaten badly by Aiden.

85.     In response, Defendant Rudolph failed to intervene to stop the attack or otherwise protect J.M., and the attack was permitted to continue unabated as Aiden inflicted severe and traumatic facial and head injuries on J.M. who was helpless to defend himself against the violent attack.

83.     Upon arrival at the bus stop where J.M.'s father was waiting to receive him, T.M. found J.M. bleeding profusely from his face.  Upon observing this, T.M. erroneously assumed J.M. had a bloody nose during the ride home and, in fact, apologized to Defendant Rudolph for the bloody mess all over the seat and window.

84.     In response, Defendant Rudolph said "don't worry about it" to T.M. and lead him to believe that the bloody mess was the result of J.M having a nosebleed on the bus.  Defendant Rudolph did not tell T.M. anything about the attack that had just occurred which was what actually caused J.M. to be bleeding profusely from his face.

85.     J.M.'s parents, Plaintiffs, S.M. and T.M. notified ESASD about the April 25, 2022, bus incident.

86.     The following day, on April 26, 2022, ESASD suspended Defendant Rudolph - with pay - for his failure to intervene to stop the attack and protect J.M.

87.     Also on April 26, 2022, the morning after the April 25, 2022, incident, Defendant Robins, who was employed by ESASD as Transportation Director for the school district, called Plaintiff, S.M., and apologized profusely for what happened to J.M., expressing her regret for both her and ESASD's failure to protect J.M. from harm after S.M. had notified her - prior to April 25, 2022 - of the foreseeable harm J.M. was facing on the school bus.

88.     Plaintiff, S.M., then asked Defendant Robins about her inaction in the face of her prior express warnings about the peril to J.M.'s safety and ESASD and Defendant Robins' refusal to share the internal school bus surveillance video footage as requested. In response, Defendant Robins cited privacy concerns as grounds for withholding it.

89.     Plaintiff, S.M., then informed Defendant Robins that the Principal of Middle Smithfield Elementary School during the 2021-2022 school year, Defendant, Jennifer Moriarty, advised T.M. earlier on the morning of April 26, 2022, that any privacy concerns could be addressed by blurring faces. However, Defendant Robins nevertheless refused to permit J.M.'s parents to view the surveillance video footage of J.M.'s school bus ride on March 8, 2022, thereby increasing the profound emotional distress suffered by Plaintiffs, S.M. and T.M.

90.     Both the March 8, 2022, and April 25, 2022, violent incidents were reported by J.M.'s parents, in writing, by way of e-mail messages sent to ESASD staff and administrators, including Mrs. Lopez, and Defendant Robins.

91.     The day after the attack, on April 26, 2022, Defendant Rudolph called J.M's father, T.M. and apologized profusely for not telling him about the violent attack that rendered J.M. so

severely injured. Defendant Rudolph told T.M. that another student, Tyler, told him about the attack.

92.    Following the attack on April 25, 2022, J.M.' s parents sought immediate medical care and he was found to have sustained numerous traumatic injuries including, but not limited to, facial contusions, dental injury, lacerations, traumatic brain injury, post-traumatic stress disorder, and other permanent disabling injuries.

93.    J.M. will likely suffer the debilitating effects of the injuries he sustained in the attack for the rest of his life.

94.    This savage beating was witnessed and acknowledged by ESASD employee, Defendant Rudolph.

95.    Defendant Rudolph failed to intervene, remedy, and/or timely report the April 25, 2022, incident with Aiden and J.M. as mandated by Pennsylvania law.

96.    Furthermore, Defendant Rudolph failed to report the assault of J.M. on the day of the incident either to J.M's parents or to his superiors, or anyone, at ESASD.

97.    Video and photographs of J.M's severe facial injuries, which were actively bleeding, were captured on a home surveillance camera after immediately debarking his school bus on April 25, 2022.

98.    Following the April 25, 2022, incident, Plaintiffs, T.M. and S.M., specifically demanded preservation of evidence, including school bus videos surveillance footage and begged for an investigation and protection of their poor innocent child.

99.    Yet, not until on or about May 6, 2022, was a mandated report made to ChildLine by ESASD.

100.    Eventually, ESASD permitted Plaintiff, T.M, to view a select portion of the internal video surveillance footage from April 25, 2022, which depicted the brutal and violent attack of his helpless child, and Defendant Rudolph observing the attack, knowing of the ongoing assault, and taking no action whatsoever to stop or intervene.

101.    Plaintiff, S.M., J.M's mother, refused to watch the video due to overwhelming emotional distress she experienced even hearing about the assault on J.M.

102.    As a direct and proximate result of the acts and omissions of Defendant, ESASD, as described herein, including the acts and omissions of its agents, administrators, servants, workers, and employees, including Defendant Rudolph, Minor Plaintiff, J.M., was caused to suffer severe, traumatic, permanent, and disabling injuries in the violent and savage attacks of March 8, 2022, and April 25, 2022, including, but not limited to:

- Facial Trauma
- Facial Swelling and Bruising
- Bruised Left Ear Lobe
- Chipped Left Central Incisor
- Laceration to Lips
- Mass and Lump to Head
- Post-Traumatic Stress Disorder
- Fear Response
- Aggression
- Decline in Behavior
- Stress
- Anxiety
- Increase in Severe Cognitive Impairments
- Scratches to neck, ear, and finger
- Toileting Regression
- Severe Sleep Disturbance
- Self-Injury Behavior
- Night Terrors

103.    Prior to the violent and savage attacks of March 8, 2022, and April 25, 2022, that J.M. endured, J.M. had achieved full potty training. However, following the incidents, he regressed

significantly and began to experience daily episodes of urinating himself at school and urinating and defecating in his pants at home. This regression not only disrupted his academic and therapeutic goals but also disrupted the lives of his entire family including his aprents, Plaintiffs S.M. And T.M., and J.M. is undergoing active medical treatment to address his toilet regression which is directly linked to and a direct result of the violent and savage attacks of March 8, 2022, and April 25, 2022, that J.M. endured on the ESASD school bus.

104.    Moreover, for several months following violent and savage attacks of March 8, 2022, and April 25, 2022, J.M. experienced intense night terrors and inconsolable crying spells including frequently awaking from sleep screaming and accompanied by inconsolable crying. These episodes persisted over several months, gradually decreasing in intensity but still occurring intermittently to this day.

105.    Furthermore, following violent and savage attacks of March 8, 2022, and April 25, 2022, J.M. began self-injuring by hitting his head and legs, accompanied by continuous crying episodes, and J.M. is undergoing active medical treatment to address his self-injury behavior which is directly linked to and a direct result of the violent and savage attacks of March 8, 2022, and April 25, 2022, that J.M. endured on the ESASD school bus.

106.    As a direct and proximate result of the acts and omissions of Defendant, ESASD, as described herein, including the acts and omissions of its agents, administrators, servants, workers, and employees, Minor Plaintiff, J.M., suffered severe shock to his nervous system, great physical pain and mental anguish.

107.    The negligent, careless, and reckless conduct of ESASD was a factual cause of Minor Plaintiff, J.M.'s severe, traumatic, permanent, and disabling injuries that J.M. sustained in the violent and savage attacks of March 8, 2022, and April 25, 2022.

108.    As a direct and/or proximate result of Defendant, ESASD's actions and/or inactions, Minor Plaintiff, J.M. was prevented and will continue to be prevented from performing his daily activities and obtaining the full enjoyment of life and has sustained and continues to sustain loss of earning capacity, and he will continue to suffer lost earnings for the remainder of his life, and has in the past and will continue to require medical treatment, and incur medical expenses, for his injuries.

109.    Minor Plaintiff, J.M.'s severe, disabling, and permanent injuries as described herein, were directly and proximately caused by the negligence and recklessness of all Defendants.

110.    The negligence, recklessness and unlawful acts and omissions of Defendants in this action, jointly and severally, as set forth herein, increased the risk of harm to Minor Plaintiff, J.M. and were substantial factors in bringing about J.M.'s severe, disabling, and permanent injuries.

111.    The negligent, careless, reckless, and unlawful acts and omissions on the part of Defendants, jointly and severally, as set forth herein, directly and proximately caused Minor Plaintiff, J.M. pain and suffering that resulted from the injuries suffered by J.M. during the violent and savage attacks of March 8, 2022, and April 25, 2022.

112.    As a direct and proximate result of the negligent, careless, and reckless conduct of Defendants, as set forth herein, J.M. suffered, and will continue to suffer, substantial economic and non-economic injuries, damages and losses, including:

> a. conscious physical pain, suffering and discomfort and disability;
> b. loss of future earnings and earnings capacity;
> c. loss of enjoyment of life and life's pleasures;
> d. medical/hospital expenses;
> e. embarrassment, humiliation and shock to his nervous system; and
> f. such other injuries, damages, and losses as described more fully herein.

113.    Defendants are jointly and severally liable for the injuries sustained by the Minor Plaintiff.

114.    The actions of all Defendants were carried out willfully, wantonly and maliciously and with reckless disregard for the consequences as to reveal a conscious indifference to Minor Plaintiff J.M's rights.

## COUNT I - VIOLATIONS OF THE 14th AMENDMENT
**Plaintiff, J.M., by and through his parents and natural guardians, T.M. and S.M.**
**v.**
**Defendants, East Stroudsburg Area School District, Colonial Intermediate Unit 20,**
**William Riker, Jennifer Moriarty, Damaris Robins, and Rudolph Parciasepe**

115.    Plaintiff realleges and incorporates by reference the averments contained in the previous paragraphs, inclusive, the same as if fully stated herein

116.    Defendants' conduct in failing to provide the Minor/Plaintiff with a free appropriate public education constitutes an unlawful discrimination against the Plaintiff and other special needs children in violation of the Equal Protection Clause of the 14th Amendment and in violation of due process contrary to the 14th Amendment to the United States Constitution, including the substantive due process right to bodily integrity.

117.    The above-described actions of Defendants were directed at Minor/Plaintiff J.M. due to his disability status as a special needs student.

118.    The above-described actions of Defendants were willful, wanton, egregious and conscience shocking.

119.    The actions of Defendants were the direct and proximate cause of Minor Plaintiff's aforementioned injuries.

120.    By reason of the aforesaid, Minor Plaintiff's Civil Rights were violated as guaranteed by Federal Statutes.

121.    As a result of the above violations, Minor Plaintiff has suffered damages as described above.

**WHEREFORE**, Plaintiff, J.M., by and through his parents and natural guardians, T.M. and S.M., demands judgment in his favor against Defendants East Stroudsburg Area School District, Colonial Intermediate Unit 20, William Riker, Jennifer Moriarty, Damaris Robins, and Defendant Rudolph, jointly and severally, in an amount in excess of Fifty Thousand ($50,000.00) Dollars, and in an amount in excess of compulsory arbitration, and any such other relief as the Court deems appropriate.

## COUNT II - INDIVIDUALS WITH DISABILITY EDUCATION ACT 20 U.S.C. §1400 ET SEQ.
**Plaintiff, J.M., by and through his parents and natural guardians, T.M. and S.M.**
**v.**
**Defendants, East Stroudsburg Area School District, Colonial Intermediate Unit 20, William Riker, Jennifer Moriarty, Damaris Robins, and Rudolph Parciasepe**

122.    Plaintiff realleges and incorporates by reference the averments contained in the previous paragraphs, inclusive, the same as if fully stated herein

123.    Defendants have violated the rights of Minor Plaintiff J.M. under the Individuals with Disability Education Act (I.D.E.A.), 20 U.S.C. Section 1400, et seq. by failing to identify, evaluate and provide the Minor Plaintiff with a free appropriate public education and by permitting him to be physically and savagely attacked and beaten while he was being transported in an ESASD school bus, as described more particularly above, in disregard of the law.

124.    As a result of the above violations, Minor Plaintiff has suffered damages as described above.

**WHEREFORE**, Plaintiff, J.M., by and through his parents and natural guardians, T.M. and S.M., demands judgment in his favor against Defendants East Stroudsburg Area School District, Colonial Intermediate Unit 20, William Riker, Jennifer Moriarty, Damaris Robins, and Defendant Rudolph, jointly and severally, in an amount in excess of Fifty Thousand ($50,000.00) Dollars, and in an amount in excess of compulsory arbitration, and any such other relief as the

Court deems appropriate.

## COUNT III - VIOLATION OF SECTION 504 OF THE FEDERAL REHABILITATION ACT
**Plaintiff, J.M., by and through his parents and natural guardians, T.M. and S.M.**
**v.**
**Defendants, East Stroudsburg Area School District, Colonial Intermediate Unit 20, William Riker, Jennifer Moriarty, Damaris Robins, and Rudolph Parciasepe**

125.    Plaintiff realleges and incorporates by reference the averments contained in the previous paragraphs, inclusive, the same as if fully stated herein.

126.    Section 504 of the Rehabilitation Act, 29 U.S.C.A. Section 794, states "[n]o otherwise qualified individual with a disability in the United States, as defined in Section 705(20) of this title shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving federal financial assistance or under any program or activity conducted by an executive agency or by the United States Postal Service."

127.    Upon information and belief, it is believed and therefore averred that the East Stroudsburg Area School District received federal funding for the special education program in which Minor Plaintiff J.M. participated as a student and where he was transported to and from by Defendant Rudolph.

128.    Upon information and belief, Defendants have discriminated against Minor Plaintiff J.M. herein because of his disability, namely his special needs including autism spectrum disorder, non-verbal autism, and severe intellectual disability, in that they failed to provide him with the same protection that all other students were provided by failing to protect him from being subjected to the physical violent attack and abuse by another older student with known behavioral issues and violent tendencies as more fully described above.

129.    Defendants owed Minor Plaintiff J.M. the duty of care to ensure he was protected

from, and did not endure, physical, emotional, psychological and mental abuse in accordance with Section 504 of the Rehabilitation Act.

130.    Defendants failed to provide Minor Plaintiff J.M. with a safe and appropriate education atmosphere as was provided to all other students not suffering from disabilities similar to Minor Plaintiff J.M.

131.    Defendants' actions constituted a conscious disregard for the Minor Plaintiff's disability and discriminated against him based on his disability.

132.    As a result of the above-described violations, Minor Plaintiff J.M. suffered the aforementioned damages.

**WHEREFORE**, Plaintiff, J.M., by and through his parents and natural guardians, T.M. and S.M., demands judgment in his favor against Defendants East Stroudsburg Area School District, Colonial Intermediate Unit 20, William Riker, Jennifer Moriarty, Damaris Robins, and Defendant Rudolph**,** jointly and severally, in an amount in excess of Fifty Thousand ($50,000.00) Dollars, and in an amount in excess of compulsory arbitration, and any such other relief as the Court deems appropriate.

## COUNT IV - INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
**Plaintiffs, T.M. and S.M., individually, and J.M., by and through his parents and natural guardians, T.M. and S.M.**

**v.**

**Defendants, East Stroudsburg Area School District, Damaris Robins, and Rudolph Parciasepe**

133.    Plaintiff realleges and incorporates by reference the averments contained in the previous paragraphs, inclusive, the same as if fully stated herein.

134.    The aforementioned conduct of Defendant Rudolph in deliberately failing to intervene to protect an innocent, helpless non-verbal autistic child who was being savagely beaten

by another, older and violent student on the school district bus that Defendant Rudolph was operating, despite Defendant Rudolph having personally observed the attack as it was occurring and despite Defendant Rudolph having been told by another student that the attack was occurring, constitutes extreme and outrageous conduct and exceeds the bounds of decency and tolerability in a civilized community.

135.    The extreme and outrageous conduct of Defendant Rudolph, specifically on April 25, 2022, and of ESASD on both March 8, 2022 and April 25, 2022, was intentional and/or reckless.

136.    Defendant Rudolph, acting within his employment duties as an employee of ESASD, intentionally inflicted emotional distress upon Minor Plaintiff, J.M., as well as his parents, Plaintiffs, T.M. and S.M., by establishing and creating an environment of terror and abuse on the school district bus, by virtue of his refusal to intervene to protect a helpless child with special needs.

137.    Defendant Rudolph, acting within his employment duties as an employee of ESASD, intentionally inflicted emotional distress upon Plaintiffs, T.M. and S.M., by deliberately failing to inform J.M's father the day of the April 25, 2022 attack about what had actually happened to J.M. and instead letting T.M. believe that J.M. was responsible for the blood all over the bus due to his having a nosebleed, and forcing J.M.'s father to have to endure the experience of watching the video surveillance footage of the April 25, 2022, attack where his helpless, non-verbal autistic child is mercilessly beaten to a bloody pulp by an older, able-bodied much larger student.

138.    As a direct and proximate result of Defendant Rudolph permitted J.M. to be viciously and violently beaten nearly to death on the school bus, Minor Plaintiff J.M. has endured

and will continue to endure physical pain, emotional and psychological pain and suffering, including but not limited to post-traumatic stress, fear and developmental delays.

139.    As a further direct and proximate result of Defendant Rudolph permitting J.M. to be viciously and violently beaten nearly to death on the school bus, Minor Plaintiff J.M. has suffered and will continue to suffer a loss of life's pleasures.

140.    As a further direct and proximate result of Defendant Rudolph permitting J.M. to be viciously and violently beaten nearly to death on the school bus, Minor Plaintiff J.M. has been forced and will be forced to undergo psychological, emotional and psychiatric treatment.

141.    The conduct of Defendant Rudolph in intentionally inflicting emotional distress upon Minor Plaintiff J.M., constitutes extreme and outrageous conduct, which conduct was committed willfully, wantonly and/or with reckless indifference to the rights, safety and well-being of Minor/Plaintiff J.M. Defendant Rudolph knew that J.M. was being viciously and savagely beaten and bloodied while he was strapped in and restrained in his school bus seat and unable to defend or protect himself. Nevertheless, Defendant Rudolph deliberately continued to drive the bus and deliberately failed to intervene in any way to stop the attack, separate the attacker from J.M. or otherwise protect J.M. in conscious disregard of the clear and present and readily apparent risk of harm to J.M. Said conduct entitles Plaintiff to punitive damages and claim is made thereof.

142.    Following the March 8, 2022, incident, J.M's mother, Plaintiff S.M., contacted Defendant, Damaris Robins by electronic email communication and notified her that she is concerned J.M. may have been assaulted on the school bus on March 8th, and requested of Defendant Robins and ESASD that J.M. be seated in the front of the bus so the bus driver could keep an eye on him for his protection and safety.

143.    However, Defendant Robins refused to grant S.M.'s request that J.M. be seated in

the front of the bus so the bus driver could keep an eye on him, and this request was likewise ignored by ESASD following the March 8, 2022, incident.

144.   Following the March 8, 2022, incident, Plaintiff, S.M., sent multiple electronic email messages to Defendant Robins requesting an investigation into the March 8, 2022 incident on the school bus and requesting that ESASD institute simple protective measures for J.M. such as seating him near the front of the bus in view of the bus driver.

145.   Each of Plaintiff S.M.'s written emails and documented concerns expressed to Defendant Robins went ignored, or otherwise unaddressed by Defendants Robins and ESASD.

146.   Defendants, Damaris Robins and ESASD failed to take any action the protect J.M from harm in response to Plaintiff, S.M.'s initial report about the March 8 , 2022, incident.

147.   Defendant ESASD, by and through the acts and failures to act of Defendant Robins, willfully disregarded Plaintiff S.M.'s documented concerns by:

f)   Failing to respond to multiple emails from Plaintiff S.M. raising concerns about the March 8, 2022 incident and J.M.'s safety in general while riding on the school bus;

g)   Failing to investigate the March 8, 2022 incident;

h)   Failing to permit either of J.M.'s parents to view internal school bus surveillance video footage depicting J.M.'s school bus ride on March 8, 2022, as Plaintiff requested;

i)   Failing to ensure proper and adequate motoring and supervision of J.M. and the other school students riding on the school bus including on March 8, 2022 and after March 8, 2022; and

j) Failing to ensure that J.M. was seated at the front of the bus in view of the bus driver, as requested by Plaintiff, S.M., following the March 8, 2022, incident.

148. Following the March 8, 2022, incident, J.M. was not seated at the front of the bus for his protection and safety as requested by his mother of Defendant Robins and continued to ride the bus with other able-bodied students with known behavioral issues and violent tendencies.

149. Furthermore, the morning after the April 25, 2022, incident, Defendant Robins called Plaintiff, S.M., and apologized profusely for what happened to J.M., expressing her regret for both her and ESASD's failure to protect J.M. from harm after S.M. had notified her - prior to April 25, 2022 - of the foreseeable harm J.M. was facing on the school bus.

150. In response to Defendant Robins apologies and expressions of regret, Plaintiff, S.M., asked Defendant Robins about her inaction in the face of her express warnings about the peril to J.M.'s safety and ESASD and Defendant Robins' refusal to share the internal school bus surveillance video footage as requested, Defendant Robins cited privacy concerns as grounds for withholding it.

151. Plaintiff, S.M., then informed Defendant Robins that the Principal of Middle Smithfield Elementary School during the 2021-2022 school year, Defendant, Jennifer Moriarty, advised T.M. earlier on the morning of April 26, 2022, that any privacy concerns could be addressed by blurring faces. However, Defendant Robins nevertheless refused to permit J.M.'s parents to view the surveillance video footage of J.M.'s school bus ride on March 8, 2022, thereby increasing the profound emotional distress suffered by Plaintiffs, S.M. and T.M.

152. On April 25, 2022, despite his severe disabilities, J.M. was again placed on a school bus with older able-bodied children, including Aiden, who was known to ESASD and Defendant Robins to have documented behavioral issues and violent tendencies.

153.    On April 25, 2022, J.M. was not seated near the front of the bus, as requested of Defendant Robins and ESASD by J.M.'s parents.

154.    On April 25, 2022, J.M. was the only child on the school bus who was strapped to and restrained in his school bus seat, as he was on March 8, 2022.

155.    On April 25, 2022, after J.M. was strapped in and restrained in his seat, Aiden took his seat on the school bus in a seat located directly across the aisle from J.M.

156.    While the bus was travelling from Middle Smithfield Elementary School, and in plain view of Defendant Rudolph who had a clear view in his rear view mirror of what the students were doing right behind him, Aiden proceeded to savagely and violently attack J.M. while he was restrained in his seat, including punching him in the face and head and repeatedly hurling and throwing closed fist punches at and connecting with J.M.'s face, nose, eye and head.

157.    The savage attack continued unabated for several minutes as Aiden continued to hurl violent punches at J.M.'s face and head, resulting in J.M. bleeding profusely from his face, with blood all over J.M.'s seat and window.

158.    J.M. sustained numerous severe and traumatic injuries in the attack.

159.    The conduct of Defendant Damaris Robins in intentionally inflicting emotional distress upon Minor Plaintiff J.M., as well as Plaintiffs, S.M. and T.M., constitutes extreme and outrageous conduct, which conduct was committed willfully, wantonly and/or with reckless indifference to the rights, safety and well- being of Minor Plaintiff J.M. and his parents, Plaintiffs, S.M. and T.M., Defendant Robins knew that despite his severe disabilities, J.M. was being placed on a school bus with older able-bodied children, including Aiden, who was known to Defendant Robins and ESASD to have documented behavioral issues and violent tendencies, and deliberately failed to intervene or act in any way to protect J.M. from foreseeable severe harm in conscious

32

disregard of the clear and present and readily apparent risk of harm to J.M. Said conduct entitles Plaintiffs, including upon Minor Plaintiff J.M., as well as Plaintiffs, S.M. and T.M., to punitive damages and claim is made thereof.

WHEREFORE, Plaintiff, J.M., by and through his parents and natural guardians, T.M. and S.M., demands judgment in his favor against Defendants East Stroudsburg Area School District, Colonial Intermediate Unit 20, William Riker, Jennifer Moriarty, Damaris Robins, and Rudolph Parciasepe, jointly and severally, in an amount in excess of Fifty Thousand ($50,000.00) Dollars, and in an amount in excess of compulsory arbitration, and any such other relief as the Court deems appropriate.

### COUNT V – NEGLIGENCE
**Plaintiffs, T.M. and S.M., individually, and J.M., by and through his parents and natural guardians, T.M. and S.M.**
**v.**
**Defendants, East Stroudsburg Area School District, Colonial Intermediate Unit 20, Damaris Robins, and Rudolph Parciasepe**

160.    Plaintiff realleges and incorporates by reference the averments contained in the previous paragraphs, inclusive, the same as if fully stated herein.

161.    During the relevant time period during School Year 2021-2022, Defendant Rudolph was employed by the East Stroudsburg Area School District as a bus driver to provide transportation services for students enrolled in the district, and consequently had a duty to the school district students he transported, including Minor Plaintiff J.M., to provide a safe environment for them while they are being transported to and from school.

162.    Within this time period, Defendant Rudolph negligently, carelessly and recklessly breached his duty to render transportation services with reasonable care for the heightened needs of the special education students on the bus he was operating, including Minor Plaintiff J.M.

163.    The negligence, carelessness and recklessness of Defendant Rudolph consisted of,

*inter alia*:

    a. Failing to exercise reasonable care to protect Minor Plaintiff J.M. against physical harm, which failure increased the risk of harm to Minor Plaintiff J.M.;

    b. Failing to act as a reasonably prudent school district employee would under the circumstances;

    c. Failing to act as a reasonably prudent bus driver of elementary school-aged students would under the circumstances;

    d. Failing to exercise reasonable care to protect Minor/Plaintiff J.M.;

    e. Failing to intervene to stop a violent attack of a helpless child with special needs that was occurring on the school district bus he was operating;

    f. Failing to intervene to separate the attacker from Minor Plaintiff J.M., when he knew J.M. was being violently attacked on the school district bus he was operating;

    g. Failing to act to protect J.M. from physical harm when he knew J.M. was being violently attacked on the school district bus he was operating;

    h. Failing to act to protect J.M. from physical harm after he was told by another student on the bus that J.M. was being violently attacked on the school district bus he was operating;

    i. Acting without due regard for the rights, safety and well-being of Minor/Plaintiff J.M.; and

    j. Failing to keep the students he was transporting on a school district bus, including Minor/Plaintiff J.M., safe in his care, custody and control.

164. As a direct and proximate result of the negligence, carelessness and recklessness of

Defendant Rudolph, Minor Plaintiff J.M. has endured and will continue to endure physical pain, psychological and emotional suffering, including but not limited to post-traumatic stress, fear and developmental delays.

165.    As a further direct and proximate result of Defendant Rudolph's negligence, carelessness and recklessness, Minor Plaintiff J.M. has suffered and will continue to suffer a loss of life's pleasures.

166.    Following the March 8, 2022, incident, J.M's mother, Plaintiff S.M., contacted Defendant, Damaris Robins by electronic email communication and notified her that she is concerned J.M. may have been assaulted on the school bus on March 8th, and requested of Defendant Robins and ESASD that J.M. be seated in the front of the bus so the bus driver could keep an eye on him for his protection and safety.

167.    However, Defendant Robins refused to grant S.M.'s request that J.M. be seated in the front of the bus so the bus driver could keep an eye on him, and this request was likewise ignored by ESASD following the March 8, 2022, incident.

168.    Following the March 8, 2022, incident, Plaintiff, S.M., sent multiple electronic email messages to Defendant Robins requesting an investigation into the March 8, 2022 incident on the school bus and requesting that ESASD institute simple protective measures for J.M. such as seating him near the front of the bus in view of the bus driver.

169.    Each of Plaintiff S.M.'s written emails and documented concerns expressed to Defendant Robins went ignored, or otherwise unaddressed by Defendants Robins and ESASD.

170.    Defendants, Damaris Robins and ESASD failed to take any action the protect J.M from harm in response to Plaintiff, S.M.'s initial report about the March 8 , 2022, incident.

171.    Defendant ESASD, by and through the acts and failures to act of Defendant

Robins, willfully disregarded Plaintiff S.M.'s documented concerns by:

    k) Failing to respond to multiple emails from Plaintiff S.M. raising concerns about the March 8, 2022 incident and J.M.'s safety in general while riding on the school bus;

    l) Failing to investigate the March 8, 2022 incident;

    m) Failing to permit either of J.M.'s parents to view internal school bus surveillance video footage depicting J.M.'s school bus ride on March 8, 2022, as Plaintiff requested;

    n) Failing to ensure proper and adequate motoring and supervision of J.M. and the other school students riding on the school bus including on March 8, 2022 and after March 8, 2022; and

    o) Failing to ensure that J.M. was seated at the front of the bus in view of the bus driver, as requested by Plaintiff, S.M., following the March 8, 2022, incident.

172.    Following the March 8, 2022, incident, J.M. was not seated at the front of the bus for his protection and safety as requested by his mother of Defendant Robins and continued to ride the bus with other able-bodied students with known behavioral issues and violent tendencies.

173.    Furthermore, the morning after the April 25, 2022, incident, Defendant Robins called Plaintiff, S.M., and apologized profusely for what happened to J.M., expressing her regret for both her and ESASD's failure to protect J.M. from harm after S.M. had notified her - prior to April 25, 2022 - of the foreseeable harm J.M. was facing on the school bus.

174.    In response to Defendant Robins apologies and expressions of regret, Plaintiff, S.M., asked Defendant Robins about her inaction in the face of her express warnings about the peril to J.M.'s safety and ESASD and Defendant Robins' refusal to share the internal school bus

surveillance video footage as requested, Defendant Robins cited privacy concerns as grounds for withholding it.

175.    Plaintiff, S.M., then informed Defendant Robins that the Principal of Middle Smithfield Elementary School during the 2021-2022 school year, Defendant, Jennifer Moriarty, advised T.M. earlier on the morning of April 26, 2022, that any privacy concerns could be addressed by blurring faces. However, Defendant Robins nevertheless refused to permit J.M.'s parents to view the surveillance video footage of J.M.'s school bus ride on March 8, 2022, thereby increasing the profound emotional distress suffered by Plaintiffs, S.M. and T.M.

176.    On April 25, 2022, despite his severe disabilities, J.M. was again placed on a school bus with older able-bodied children, including Aiden, who was known to ESASD and Defendant Robins to have documented behavioral issues and violent tendencies.

177.    Defendant Robins knew that despite his severe disabilities, J.M. was being placed on a school bus with older able-bodied children, including Aiden, who was known to Defendant Robins and ESASD to have documented behavioral issues and violent tendencies, and deliberately failed to intervene or act in any way to protect J.M. from foreseeable severe harm in conscious disregard of the clear and present and readily apparent risk of harm to J.M

178.    The negligent, careless and reckless conduct of Defendants, ESASD, Damaris Robins, and Rudolph Parciasepe constitutes extreme and outrageous conduct, which conduct was committed willfully, wantonly and/or with reckless indifference to the rights, safety and well-being of Minor Plaintiff J.M. Defendant Rudolph knew that J.M. was being viciously and savagely beaten and bloodied while he was strapped in and restrained in his school bus seat and unable to defend or protect himself.

179.    Nevertheless, Defendant Rudolph deliberately continued to drive the bus and

deliberately failed to intervene in any way to stop the attack, separate the attacker from J.M. or otherwise protect J.M. in conscious disregard of the clear and present and readily apparent risk of harm to J.M. Said conduct entitles Plaintiffs, including upon Minor Plaintiff J.M., as well as Plaintiffs, S.M. and T.M., to punitive damages and claim is made thereof.

180.    Furthermore, prior to both the March 8, 2022, and April 25, 2022, assaults on J.M. on the school bus, Defendant, Colonial Intermediate Unit 20, unilaterally transferred J.M. from his previous school to a Colonial Intermediate Unit 20 classroom at Middle Smithfield Elementary School and this transfer was made without the request or consent of his parents, S.M. and T.M.

181.    As a result of Colonial IU's unilateral transfer of J.M. without the consent or request of his parents, J.M. was placed on a different school bus where he was forced to ride with other able-bodied, neurotypical children, including students like Aiden who had documented behavioral issues and violent tendencies, and J.M. was thereby placed by Defendant, Colonial Intermediate Unit 20, in immediate peril of suffering a violent attack precisely like the ones he endured on both March 8, 2022, and April 25, 2022.

182.    Prior to March 8, 2022, neither Defendants Robins nor Defendant Rudolph ever informed J.M.'s parents that J.M. was riding on a school bus with other able-bodied, neurotypical children, including students like Aiden who had documented behavioral issues and violent tendencies.

183.    J.M. was unilaterally transferred to this new school bus without the consent or knowledge of his parents, S.M. and T.M., exacerbating and compounding the profound emotional distress that the assaults have caused S.M. and T.M. to suffer.

**WHEREFORE**, Plaintiff, J.M., by and through his parents and natural guardians, T.M. and S.M., demands judgment in his favor against Defendants East Stroudsburg Area School District, Colonial Intermediate Unit 20, William Riker, Jennifer Moriarty, Damaris Robins, and Rudolph Parciasepe, jointly and severally, in an amount in excess of Fifty Thousand ($50,000.00) Dollars, and in an amount in excess of compulsory arbitration, and any such other relief as the Court deems appropriate.

Respectfully submitted,

*/s Luke P. Moran*

_____

Luke P. Moran, Esquire
Robert T. Moran, Esquire
Lawrence J. Moran, Sr., Esquire
**THE MORAN LAW GROUP, LLC**
116 N. Washington Ave., Suite 400
Scranton, PA 18503
Email: lpm@themoranlawgroup.com

*Attorneys for Plaintiffs*

Date:   August 28, 2024

Docusign Envelope ID: C405A451-E8FD-465D-8F33-1FC4EA96D086

## VERIFICATION

We, T.M. and S.M., Individually and as Parents and natural guardians of J.M., a minor, are the Plaintiffs in this civil action, hereby verify, subject to the penalties of *18 Pa.C.S. § 4904*, relating to unsworn falsification to authorities, that the facts averred in this Complaint, are true and correct to the best of our knowledge or information and belief.

Dated: 8/27/2024 | 3:17 PM EDT

T.M.

Dated: 8/27/2024 | 2:27 PM EDT

S.M.

40